Good morning, Eric Scharf on behalf of Appellant Joanne Tragas, I'd like to reserve three minutes for rebuttal if that's acceptable. Twelve minutes to cover massive briefs. I'm going to start right in with Roman numeral one, what I call theatrical reenactment. Really what that amounted to was summary evidence presented in an extraordinary and unprecedented fashion. I've scoured Westlaw databases in the United States, state and federal, looking for anything where U.S. attorney and case agent presented orally written computer documents. Didn't find any. Leaves the court in an unusual position. How do you decide this issue? Well, I think there's really a very stark contrast between what we're arguing and what I'm arguing on behalf of Ms. Tragas and what the government's arguing. If you look at the government's brief, they are invested in the idea that this is comparable to or covered by precedent governing depositions. I don't think it is, and I want to briefly explain my theory or my understanding of what really the nub of this legal issue is. On the one hand, you've got the government's cases on deposition. On the other hand, you've got our cases on reenactment. And for a number of reasons, I think our cases are clearly governing and deposition cases are not. Start with the fact that there's a special federal rule of criminal procedure 15 governing depositions, taking and use in criminal cases. They have to be sworn. Reenactment, no. Reenactment, there's no special rule. There's a testimonial expectation with respect to a deposition when it's taken. When you take a deposition and you sit somebody down, they know darn well what they're doing. They're giving testimony that it could affect somebody's life, liberty, or property. And they're sworn in. And the solemnness and all of the trappings of testimony travel with that. The solemnness of the testimony? I mean, depositions are often read by counsel. I've heard theatrical performances reading depositions where somebody plays the expert and somebody plays the so-and-so. I mean, that happens all the time. I meant when the testimony is given originally or not. When it's given originally, yeah, it's just on paper. Now, these are documents you're talking about? You are the basis, the script, if you will, for the reenactment. We're electrons, computer documents. Okay. And the documents are metadata. That is correct. And the U.S. Attorney could have read the documents at closing? I'm not sure you are. Why not? I mean, it's evidence. In a closing argument, you can refer and quote the evidence, can't you, now? I think you can as long as you want. What's the prejudice? If they could have read theatrically the evidence of closing, what does it matter if they read theatrically during the hearing? It's both. And it's the fact that... Let's talk about reading first and get to theatrics later. I mean, you could have captured this in audio and then played the tape, right? If this had all been recorded, you couldn't play the audio? I'm sorry. If it had been recorded and otherwise met the damages... We'll get to theatrics in a second, but if you could have recorded it and played the tape, why can't someone read it? Because, Your Honor, what's happening here is this was never spoken to begin with. It's being read, and it's all in slang, vernacular, and computerese with all kinds of symbols that require interpretation. Are you saying it wasn't read accurately? Is that the objection? It was not read accurately. Okay, I mean, that's different. What's the key thing there? Tell us the reversible error on that. For one thing, the sheer quantity. For another thing, it's coming from the U.S. Attorney. And for a third thing, the errors in some places have a transcribed copy. They can look at this, so if there's an error in what's being read, they have the ability to see that. That is correct, Your Honor. Did the jury instructions, by the way, distinguish? Did the jury instructions say, by the way, it's only the transcribed version that's the evidence? Your Honor, I don't know the answer to that. I take it that instruction could have been requested. It could have, but it really isn't going to cure the prejudice of the fact that the trial closes for the last day and a half of the trial. And this is what I was about to back up to and explain how critical this is. The trial goes on for days with testimony about the ground level people using credit cards to acquire almost 100% in the last day and a half with these chat transcripts that they're trying to ascribe to her. It's the key piece of evidence, and the key point to mention is, who is the person typing the terms in these electronic documents that apparently purport to be transmitting credit card information to the people on the ground? Without this, I think it's fair to say that the government would not have secured a conviction. But I think all of you have asked questions that tend towards prejudice. I think that's what you're all getting at. And speaking to that directly, the sheer quantity of times in which the actors interpret words or misstate words that are in the chat transcript, as well as the fact that you have something... I assume. Why wasn't there? I think the answer to that is just in the simple practicality of it, that it is vanishingly difficult to analyze these things in real time. It took me and my associate days, if not weeks, of going back through and comparing the transcript to what was in the chat. And you have to look back and forth between the two. Trying to do that in real time is a near impossibility. Why? You're listening as you're reading. Yeah. You're following along, I assume. And if they misread it, it should be obvious, and you ought to get up and object, and then the judge can correct it then, as opposed to telling us vaguely there must have been errors in this thing. I don't think our brief is vague on this, Your Honor. It has citation after citation of examples of this. For example, there are other things where the speakers have different takes on what's happening. The case agent who's playing the role ascribed to the government, to the male, ground-level card scammers, doesn't, for the most part, express the emoticons, whereas the AUSA does put them in. And then in closing says, these chats are absolutely feminine. The idea is they want to ascribe these chats to the female defendant. They have the female AUSA play the role of the female defendant. And in places, they flat-out misspeak lines. They add words that aren't there. They say the wrong lines for different people. Can you give us the two things that just drive you crazy in terms of what happened? The two worst examples? The emoticons. The fact that the female AUSA, playing the role they want to ascribe to the female defendant, expresses the emoticons, whereas the case agent doesn't. The fact that in places they have words spoken supposedly by the defendant that were never spoken by the defendant because they're reading lines that, if you look at the chat transcript, are spoken by somebody else. All of this is compounded by the fact that it's beyond cross-examination. I agree with you. Defense counsel could have been... Is the law a confrontation clause problem? I am, your honor. Confrontation and cross-examination. Because the U.S. attorney is effectively beyond cross-examination. So the defense counsel can't have her on the stand and say, why did you say it this way? When the word says I-L, you said Illinois. Or when the word said L-O-L-O-U-S, you said Looneyville. In other words, they're taking liberties with what's in the formal script. And then in the closing, they compound that by saying things like I said, these chats are absolutely feminine. I know you didn't object to some of the misstatements that were made, but did you object to the entire procedure? That was preserved, your honor. And I think that also underlies the failure to micro-object. That is, specific objections at every point. He objected several times in increasingly verser of his tones and was shot down each time. Now, yes, he could have got up and said, hey, wait a minute, you inserted a comma here, you did a pauser, you did this, and he could have gone after every single instantiation of departure from the script. At some point, he's going to lose credibility with the jury looking like he's... But he didn't do it to preserve the issue anyway. I mean, you always run the risk that you're going to offend the jury by objecting too much, but that's just part of the game. You've got to preserve your objections. And if this is so egregious and so... Anyway, it should have been done. Moving on, I'd like to discuss what I call the Richardson Error. The Richardson Error flows from the fact that the government... Just real quickly, on the confrontation clause point, I'm just trying to find out where you say this. Did you argue that in your brief? I believe we did, your honor. What? I believe we did. May not have used the word confrontation, but cross-examination. How about stating the issue in your brief? Did you state the issue in your brief? I've got the issues presented here on page one of your brief. Where do you raise the issue of a violation of the confrontation clause? Your honor, it was raised... No, it wasn't raised in the statement of issues. The statement of issues is what we decide, by the way. I'm sorry, your honor? The statement of issues is what we decide on appeal. Right. And if it's not in your statement of issues, we normally don't decide it. It was reflected in the argument about cross-examination. Did the hunters testify? I don't believe they did, your honor. I don't believe they did. Richardson Error. The court and everyone below proceeded as if there were a federal offense known as access device fraud. There isn't. There is a family of offenses and there is a heading in the U.S. Code, access device fraud. And then there are ten specific enumerated offenses that can be committed in different means. But there are ten separate offenses within that family. And the problem is, with the jury form and the jury instructions, all pointed towards there being a singular offense of access device fraud. And there isn't. And it's that simple. And I know the briefs are confusing on this issue. The government's argument that... This is plain error. It is, your honor. And we've cited cases, several of them, finding plain error in the Richardson context. Richardson context, I'm sorry. I'm about to run out of time here. If there aren't, I need to reserve some time for rebuttal, I guess. So, I will yield the floor. Alright, thank you. May it please the court, your honors. Janet Parker for the United States. I submit to this court that Joanne Tragus was properly convicted and sentenced for the offenses charged against her in indictment for her participation in a very complex and very lucrative access device fraud scheme. Turning, if I may, to the first issue.  The reasons why this issue, which is expressed so hyperbolically, does not withstand rational... Just out of curiosity, I realize it doesn't seem like a Confrontation Clause argument has been made, but I'm just trying to figure out in my head what the answer to the problem would be. So, the hunters, reading what the hunters say, you can't cross-examine them. You could argue it seems to be testimonial. Why isn't it a Confrontation Clause problem? It's not a Confrontation Clause problem because it's 801D2E. These are statements made in furtherance of a conspiracy. As the courts already noted, there was no objection to that, and that really wasn't one of the issues that's framed. But these are documents that could not... Say that about Tragus. Statement against interest. No, statements in furtherance of a conspiracy, your honor, would be 801D2E. These were made in furtherance of a conspiracy. And Crawford, in the whole line of cases, says that's outside? Yes, it definitely does. It does? Okay, that's all I need to know. Classic conspiracy exception. It's not a hearsay rule. It's 801D2E. No, you're good. Keep going. Well, let me explain what we had here, because I think there's a mischaracterization of what we had. And when you understand what went on, it makes a little difference and easier to understand. Everything that was read was already in evidence. And what we took, there were almost 5,000 lines of ICQ or text messages, chat messages, whatever you want to call them. We took those and we synthesized those with the other items of evidence. There were several sources of information in this case. We had not just the chats, but we also had emails. The chats were obtained off of computer seeds from the hunters. The emails were backed up on one of the hunters' iPhones and also on Joanne Tragus' thumb drive. We had a thumb drive that was seized from her residence. It had an assortment of records, not just her emails, not just some of the stolen credit card information, but lists of customers and lists of where she received money and spent money. And that was one of the things that we did. To synthesize, we would take, say, a section of the chats or communications, which would include one of the hunters saying, here is this 18 digits for a Macy's credit card and here is another digits for a Macy's credit card. We would follow that with information from Macy's where that credit card was purchased. For example, $3,000 in Macy's credit cards purchased in Morris, Pennsylvania, Mobever County, Pennsylvania, which is near Pittsburgh. In the communications, they talk about being in Pitt, or we submit Pittsburgh. Then you have Macy's records showing where those credit cards were used and when they were used, where the shipments went. And the shipments went, not surprisingly, to Joanne Tragus. We have other ICQs that would instant message us. Can I ask you a question about the sentencing and the 6-level increase for 250 victims? Yes. It seems like a pretty serious argument. What is your response to it? Well, it is two-fold, Your Honor. First of all, this was raised for the very, the ex-post-vassal argument was not preserved. It could have been raised at sentencing. The pre-sentence report explicitly says the 2010 version of the sentencing guidelines is being used. No issue was raised regarding that whatsoever. You're making the point that it's plain air? Yes. Plain air review, that's the point you're making right now? Yes, and it's not raised until a reply brief, which I think makes it pretty much not resolved for review whatsoever. But the second thing I would submit to the court is... Why isn't there indeed plain air under our cases? It seems pretty straightforward to me.  Your Honor, just to tell you a perspective on this, I mean, it seems like we ought to come to grips with how much of an error there was, because otherwise we're just setting up a 2255 anyway. If this was a serious mistake in terms of the increase, which it looks to me like it was, why shouldn't we figure that out now? Well, the argument, Your Honor, actually is at best over four points and not six. They concede that at least two points should have been given for that, not the six that was given, the difference being four. But let me submit to the court that based on the evidence that was before the court, the court could have made that same determination considering just different financial institutions. And if the court were to remand, I would wish to have the opportunity to argue that, because I can indicate to the court, I looked at one email from Tragus, and there's 174 different financial institutions listed in one email where she's sending out... But you have to prove that these victims had actual loss when all was said and done. I don't think that's going to be very easy. Well, I don't think it's necessarily impossible. I mean, these are different banks, different financial institutions, not per account, but different banks. I didn't count a bank if it was entered more than once. I only entered it at one time. So those would be different banks who Tragus is offering their stolen credit card account numbers for their customers. So just a short change. I mean, if the point you're making is there's no prejudice, that is really powerful. But the way you just expressed it proves you can't say that, because you just said, if we send it back, I'd like to be able to look at this and figure out whether you can still get to 250 victims. I don't think you're prepared to say the evidence already shows the alternative route gets you 250 victims. And so I think that proves it's not... I am prepared to say that, Your Honor. I am prepared to say that. But on this record, there's no prejudice. Yes, because I think the trial judge saw this very evidence. These are from the emails that were part of what were made part of the record in this case. And I don't think there's anything in the district court record that says that there were only 10 financial institutions that suffered a loss. So this information was available to the trial court judge. But this is not what the trial judge relied on. Well, I'm not sure that it's absolutely clear. I think I assumed that for sake of responding to the argument, which perhaps was a mistake on my part. But I don't know that that's the same as saying that the trial court was only sentencing based on individual victims. There was no objection to that enhancement. And it wasn't really discussed in any detail. But there was a statement in the pre-sentence report... You're not saying it. You haven't argued it was waived. You're just saying it gets plain error of you. Well, I think I am saying that it's waived because... Where in your brief do you say waiver? I didn't use that express term, Your Honor. But I think that's the essence of it because it wasn't raised... There was no objection to that. There was an objection... We can waive something and we can hold him responsible for it. But when you neglect to mention it, we don't hold you responsible for forfeiting the waiver. I'm not saying that, Your Honor. I'm saying that I think that's the essence of what went on here. And as I indicated, if the court is concerned about that and thinks it wishes to remand, I would ask that it remand with the opportunity for the government to satisfy that aspect of the record. Because I believe based on the record as it was developed at trial, we can satisfy that standard. Would you concede that if we get through these hurdles of... You know, it wasn't preserved error. It was raised belatedly in the reply brief. If we get through all this, would you concede that the district court used the wrong version of the guidelines? Yes. Okay, so you concede there was error. To that aspect, yes. And whether it's prejudicial or not, you can test. And whether it's preserved, you can test. But you concede there was error. I believe in hindsight, yes, we used the wrong version of the guidelines. But I think that goes back to Judge Sutton's question. Because it was not raised as an ex post-facto claim until the reply brief, I think that would go to why I didn't respond to it in terms of waiver in part. I mean, I don't get the reply to the reply. Technically, it's not waiver, it's forfeiture, right? I mean, a waiver is an intentional... Yes, that would really apply better. I'm sorry, Your Honor. The law is the difference between forfeiture and waiver. And our law is pretty clear. If you expressly waive something, it's usually forever gone. If you simply forfeit the issue by failing to assert it, we usually review it for plain error. Well, we do review it. And you're arguing forfeiture. I'm sorry? And you're arguing forfeiture in light of what Judge Griffin just said. Yes, waiver would actually apply to the oral adjustment because there was an objection that was made in specifically with John. But that's the one you didn't argue in your briefs. You did not use the word waiver in your briefs. No, because I argued the essence of that. By using the word forfeiture? Pardon? By using the word forfeiture? I don't think I used either term, waiver or forfeiture, to be honest, Your Honor. I think I said that, as I recall, I argued that the objection as to the royal offense had been asserted and withdrawn, and that should foreclose further review. I don't think I used specifically waiver or forfeiture as to that aspect of my argument. And unless the Court has any additional questions for me, I'll be glad to yield the rest of my time to the Court. Thank you. Thank you. Your questions to me earlier about the Confrontation Clause, I'm inarticulate when I express that. What I'm getting at is inability to cross-examine. Cross-examine who? The U.S. Attorney. The U.S. Attorney is just reading evidence. But it goes way past that, Your Honor. You want to cross-examine him about how he reads the evidence or what? Yes, that's exactly right. Were you denied a chance to do that? I believe we were. There's no way to cross-examine. You didn't ask for it? No, and I don't know what you wanted to do. Ask the U.S. Attorney when she's playing. Again, the U.S. Attorney isn't just reading evidence. Did the judge deny you an opportunity to cross-examine the way the U.S. Attorney read the testimony? No, Your Honor, it didn't come up. It didn't come up, so it wasn't raised? It wasn't raised because I think it's point-blank clear you can't cross-examine an attorney in a case. I don't think anybody would even bother to ask you. Okay, well, the, I mean, private confrontation deals with testimonial evidence. And the U.S. Attorney really isn't testifying. He's reading evidence. So I don't see how the confrontation clause comes into play at all. When you say he, it's actually she. And that's material in this case. And the problem is, Your Honor, it isn't just reading evidence. That conclusion has the court saying, in effect, that reading Hamlet aloud is the same as putting on Hamlet as a play. And that's the very core of this problem. Documentary evidence that was never even spoken to begin with is then infused with meaning, emotion, and understanding.  Symbols are interpreted. Other aspects of the physical document are departed from repeatedly. And I know it wasn't objected to. I'm conceding that. But there's no way to cross-examine the person about why they're making those particular value judgments in how to put on. I guess I must say I'm not sure I understand why. I mean, it seems to me, first of all, if you think this is all about the fact that it's an attorney you can't cross-examine, you could have solved that by saying, okay, listen, if we're going to read this, it's not going to be attorneys. We're getting somebody else. So that seems like an option. And we don't know what the district court would have done with that. But that seems like an option. Step two, you do cross-examine. You sit there and you watch them read. And you let them tie their own loose. The more exaggerated they get, you just take the list of things down. And then you say, now, when you got all emotional or non-emotional, is that what the transcript said? Here's what the transcript said. Why did you do that? Were you there at the time? Were these even spoken words? I don't understand why all these tools weren't available to you. Because the person to ask that question of would be the AUSA playing the role of the defendant. Fine. If you don't like the AUSA, get someone else, a non-lawyer, to read it. But the point is, you're allowed to say, why did you say X when the transcript says Y? Why did you inject this emotion when the transcript is silent about emotion? It's beyond me why that wasn't available to you. You didn't ask for it. And you're so sure it couldn't have been done. I don't get that certitude. It would be extraordinary in a violation of multiple precedents to have the U.S. attorney be... You keep ignoring the point I said. Ask a non-lawyer to read it. So the non-lawyer is now reading it. Would you concede every line of cross-examination I've just suggested could have been used? If a non-lawyer was reading it and there were a sworn witness, yes. But that wasn't the case in this case. The U.S. attorney went on for a day and a half reading the role of the defendant. And it was over a strenuous objection of counsel. Not an objection that said don't have the attorney read it. Not an objection that said I want to cross-examine. That is true. The objections did not say that expressly. I see that you're out of time. So we'll have to wrap it up. We have your argument in hand. Do you want to talk about the sentencing issue a little bit and how that is prejudicial to your client? Well, it's prejudicial simply because of the number of years it adds. We spelled out, we put the ranges right in the brief. Do you think it's going to make any difference on remand? Is this going to be a futile exercise when we remand for resentencing to the same judge? Is there a realistic possibility that the sentence may be changed? There absolutely is, Your Honor. The enhancements, I believe we use the term more than double it, it's close. But they add a huge amount of heft to this sentence. And I guess what you're getting at is the judge just going to holistically look at the defendant and say I want this person to serve that amount of time? Yeah, I mean the guidelines are advisory anyway. And if the judge thinks this is the appropriate sentence, I mean technically he has to apply the right version of the guidelines. But my question is practically, is this going to make any difference? And to apply the correct version I would also add, and adhere to circuit precedents such as Yaeger. But yes, because the district court judge picked a sentence that was right in the middle of the guidelines. If the guidelines shift down and the heartland of the guidelines is a lower total number of months, there's no reason to think that the district court judge acting as a principal federal district court judge isn't going to do something similar and select that. Okay, under the correctly scored guidelines would the sentence still be within the guidelines? I think we spelled that out in the brief and I don't think it is. I think the sentence, if you strip away the enhancements that I'm challenging, I think it moves the sentence below what you're describing. Thank you. I don't know. Thank you very much. Case is submitted. You may call the next.